**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **ROMEO ENTERTAINMENT GROUP, INC.**, a Nebraska Corporation,<br><br>Plaintiff,<br><br>v.<br><br>**SHOWING ANIMALS RESPECT AND KINDNESS, INC.**, d/b/a SHARK, an Illinois Corporation, et al.,<br><br>Defendants. | **CASE NO. 8:08CV481**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the Motion to Dismiss (Filing No. 16) submitted by Defendant Showing Animals Respect and Kindness, Inc. ("SHARK"). In its Motion, SHARK asserts that the Plaintiff, Romeo Entertainment Group, Inc. ("Romeo"), has failed to demonstrate that this Court has personal jurisdiction over SHARK, and that Romeo's action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). Upon review of the record and applicable law, the Court concludes that Romeo has failed to demonstrate that SHARK had minimum contacts with this forum needed to satisfy constitutional requirements of due process, and the Court will dismiss Romeo's action against SHARK, without prejudice.

**FACTUAL BACKGROUND**

Romeo filed this action in the District Court of Douglas County, Nebraska, alleging that SHARK engaged in tortious interference with Romeo's contractual relationships. (*See* Filing No. 1). SHARK timely removed the matter to federal court pursuant to 28 U.S.C. § 1446, asserting that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), because the parties are citizens of different states and the amount in controversy exceeds $75,000. (Filing No. 1).

The Complaint alleges that Romeo is a talent buyer and promoter. (Filing No. 1 at ¶ 1). Romeo produces and promotes live entertainment events at venues throughout the United States, including rodeo venues such as the Cheyenne Frontier Days Celebration in Cheyenne, Wyoming; the Greeley Stampede in Greeley, Colorado; and River City Round-up in Omaha, Nebraska. (Filing No. 1 at ¶ 2). Romeo alleges that SHARK interfered with Romeo's contractual relationships with two entertainers, Carrie Underwood (First Claim for Relief) and Matchbox Twenty (Second Claim for Relief), by contacting the entertainers and encouraging them to breach their contracts to perform at Cheyenne Frontier Days in Cheyenne, Wyoming. (Filing No. 1 at ¶ ¶ 13-33). Romeo alleges that SHARK has said it will continue to contact entertainers scheduled to perform at Cheyenne Frontier Days and other rodeo events in order to induce the entertainers to breach their contracts, and Romeo seeks injunctive relief (Third Claim for Relief) to prevent such future interference with contracts. Paragraph 49 of the Complaint (Filing No. 1, Attachment 1) states:

> As of [September 26, 2008], Plaintiff has suffered damages in excess of $100,000. Plaintiff has also incurred damages for the following: show marketing costs, show preparation costs, time and expense spent booking and looking for replacement artists, refunds of sold tickets, legal expenses, lost profits, and reputation damages.

On December 3, 2008, SHARK filed a motion to dismiss for lack of personal jurisdiction. (Filing No. 16). On March 6, 2009, this Court adopted Magistrate Judge Gossett's Report and Recommendation (Filing No. 32) denying Romeo's Motion to Remand (Filing No. 14). (Filing No. 36). The issue of personal jurisdiction is now before the Court.

2

## STANDARD OF REVIEW

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a prima facie case showing there is personal jurisdiction over the defendant." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). The Court "views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor." *Id.* To withstand SHARK's motion under Fed. R. Civ. P. 12(b)(2), Romeo "must state sufficient facts in the complaint to support a reasonable inference that [SHARK] may be subjected to the jurisdiction of the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008)(citing *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). Romeo's prima facie case "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008)(internal quotations and citations omitted).

## DISCUSSION

Personal jurisdiction over a defendant must satisfy the requirements of the forum state's long-arm statue and of due process. *Dever*, 380 F.3d at 1073. Nebraska's long-arm statute allows this Court to exercise personal jurisdiction over a person who: (1) transacts any business in the state; (2) contracts to supply services or things in the state; (3) causes tortious injury by an act or omission in the state; and (4) causes tortious injury in the state by an act or omission outside the state if the person regularly does or solicits business in the state. *See* Neb. Rev. Stat. § 25-536(a)-(d). Because Nebraska's long-arm statute has been construed to permit jurisdiction to the extent of constitutional limits, the issue before this Court is whether the exercise of personal jurisdiction comports with due process. *Oriental Trading Co. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001).

3

Due process requires that a defendant have sufficient minimum contacts with the forum state such that summoning the defendant would not offend the "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 475 (1985). "Minimum contacts must exist at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Pecoraro*, 340 F.3d at 562; *Clune v. Alimak Ab*, 233 F.3d 538, 544 n.8 (8th Cir. 2000). The minimum contacts must be such that "the defendant purposely avails itself of the privilege of conducting activities within the forum state and it reasonably anticipates being haled into court there." *Burger King,* 471 U.S. at 475; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In evaluating whether a defendant's contacts in the forum state satisfy due process, a court considers five factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties. *Miller*, 528 F.3d at 1091 (citing *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir.1994)).

"With respect to the third factor, we distinguish between specific jurisdiction and general jurisdiction." *Id.*; *Steinbuch,* 518 F.3d at 586 ("The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-415 (1984))). "A state may exercise general jurisdiction if a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances the alleged injury need not have any connection with the forum state."

4

*Steinbuch,* 518 F.3d at 586. "The plaintiff must make a prima facie showing, however, that the defendant's contacts were not 'random,' 'fortuitous,' or 'attenuated.' *Id.* (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984).

Specific jurisdiction occurs when "the defendant has purposefully directed its activities at residents of the forum state" and litigation results from alleged injuries arising out of or relating to those activities. *Id*. The Defendant must reasonably anticipate being haled into court in a particular forum where its intentional and allegedly tortious actions were aimed and where the injured party receives the brunt of the injury resulting from the conduct. *Calder v. Jones*, 465 U.S. 783, 789-790 (1984). The defendant must know that its actions could have the potential to cause a devastating impact. *Id*.

In consideration of the five *Miller* factors, the Court concludes that SHARK has not fully availed itself of the privilege of conducting its activities within the state, and consequently, should not expect to be haled into court in the forum state. *Burger King,* 471 U.S. at 475. The Court also finds that any interest Nebraska may have in providing a forum for its residents in this case does not outweigh the undue burden that litigating in Nebraska imposes on SHARK. Because the Court finds that the constitutional requirements of due process have not been satisfied, the Court does not have personal jurisdiction over SHARK.

**1.     The Nature and Quality of SHARK's Contacts with Nebraska**

The nature and quality of SHARK's contacts with Nebraska are not sufficient for this Court to take personal jurisdiction. SHARK is an Illinois corporation with its principal place of business in Kane County, Illinois. (Filing No. 1 at ¶ 2). It does not maintain an office, employees, contractors, officers, directors, agents, or volunteers in Nebraska. (Hindi Affidavit ("Hindi Aff."), Filing No. 18, Pt. 9 at ¶ 36). It has not designated an agent for

5

service of process in Nebraska and is not licensed to conduct business in Nebraska. (Hindi Aff. at ¶ 39).

In opposition to SHARK's Motion to Dismiss, Romeo contends that SHARK has sufficient contacts with the forum state because two SHARK corporate officers visited Omaha in September 2008. (Filing No. 25 at 8). SHARK's one-time visit, however, is a "random, fortuitous, [and] attenuated" event that does not give rise to the requisite level of contacts necessary to satisfy the constitutional requirements of due process. *Steinbuch*, 518 F.3d at 586 (internal quotations omitted). From September 24 to 27, 2008, SHARK President Steve Hindi and one other SHARK corporate officer visited Omaha to observe and film "the River City Roundup and to share information about the mistreatment of rodeo animals with corporate delegates who were in attendance nearby." (Hindi Aff. at ¶ 41). SHARK had not previously attended a rodeo event in Nebraska, and SHARK has not returned to Nebraska since September of 2008. (Hindi Aff. at ¶ 46). SHARK's attendance at the September 2008 Roundup rodeo had no relation to SHARK's previous acts of alleged tortious interference with the contractual relationship between Carrie Underwood and Matchbox Twenty – the specific acts that Romeo argues should now subject SHARK to specific personal jurisdiction in Nebraska.

The Court concludes that the nature and quality of SHARK's contacts with Nebraska do not suffice to subject SHARK to the jurisdiction of this Court.

### 2. The Quantity of SHARK's Contacts with Nebraska

Romeo contends that SHARK's *quantity* of contacts establishes personal jurisdiction because:

> SHARK distributes, on an ongoing basis, newsletters to people all across the country, including Nebraska, as part of its normal business activities. Since June of 2008, SHARK has sent to its mailing list at least 12 newsletters. All

6

>of these newsletters attempt to solicit funds for SHARK's ongoing campaigns and activities. SHARK has received donations, gifts, or bequests from Nebraska residents.

(Filing No. 25 at 10)(internal citations omitted).

The Court finds that these contacts do not demonstrate that SHARK has purposefully availed itself of the privilege of conducting its activities within the state of Nebraska. *Burger King,* 471 U.S. at 475. While it is true that SHARK publishes a newsletter, SHARK mails this national newsletter to 1,426 addresses across the country; of those only *five* are in Nebraska. (Hindi Aff. at ¶ 50). Similarly weak is Romeo's contention that the donations SHARK has received from Nebraska residents should give rise to the requisite constitutional level of minimum contacts. "Since 1987, .087 percent of the donations, gifts, and bequests SHARK has received have originated from Nebraska." (Hindi Aff. at ¶ 51). To conclude that SHARK must be subject to personal jurisdiction in Nebraska based on these contacts would offend the "traditional notions of fair play and substantial justice." *International Shoe Co.*, 326 U.S. at 316. The quantity of SHARK's contacts with the forum state are de minimus, at most.

3. **The Relationship Between the Cause of Action and SHARK's Contacts in Nebraska**

Romeo does not claim that this Court has general personal jurisdiction over SHARK. (*See* Filing No. 25 at 14). The Court, therefore, will address the question of whether Romeo has successfully established a prima facie case of *specific* personal jurisdiction.

The circumstances surrounding SHARK's alleged efforts to thwart Romeo's contractual relationships with Carrie Underwood and Matchbox Twenty are unlike the circumstances in *Calder*, where the Supreme Court found the defendant was subject to personal jurisdiction in California. The Court in *Calder* found that the defendants' intent to

7

direct its activities to the forum state could be inferred from the defendants' knowledge that (1) the article it published would have a "potentially devastating impact" on the plaintiff, and (2) the "brunt" of that injury would be felt in California, where the publication had its largest circulation. *Calder*, 465 U.S. at 788-89 ("In sum, California is the focal point both of the story and of the harm suffered. . . [Defendants] knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation.").

The same conclusion cannot be reached with respect to SHARK's activities in this case. In allegedly attempting to thwart Romeo's contractual relationships with Carrie Underwood and Matchbox Twenty, SHARK targeted its activities to Wyoming, Oklahoma, and New York only; all SHARK's contacts with Carrie Underwood and Matchbox Twenty originated from persons or computers located in Illinois and Oklahoma. (Hindi Aff. at ¶¶ 25-27 & 31-33). At no time did SHARK contact anyone in Nebraska or direct its activities toward Nebraska. The festival where the entertainers were to perform was in Wyoming, not in Nebraska.

SHARK's activities allegedly caused Carrie Underwood and Matchbox Twenty to cancel their appearances in Cheyenne, Wyoming. (Filing No. 1 at 9-10). Neither Underwood nor Matchbox Twenty was scheduled to appear in Nebraska – nor did they cancel any appearances in Nebraska. Whereas the Supreme Court in *Calder* reasoned that the defendant should have expected the "brunt" of the injury to occur in California because that is where the defendant's publication received the widest circulation (*Calder*, 465 U.S. at 788-789), Romeo has offered no equivalent argument or evidence to substantiate its claim that SHARK should have expected the brunt of Romeo's injuries to occur in Nebraska.

Romeo argues that the requirements for specific personal jurisdiction have been met because Nebraska is Romeo's state of incorporation. The fact that Romeo is incorporated under the laws of Nebraska, however, does not give this Court specific personal jurisdiction over SHARK. SHARK was unaware of Romeo's state of incorporation until after it committed the alleged acts of tortious interference (Handi Aff. at ¶ 56), and the Court cannot infer that SHARK directed its activities to Nebraska simply by virtue of the fact that Nebraska is Romeo's state of incorporation.

Romeo also asserts that the website SHARK maintains (www.sharkonline.org) subjects to SHARK to personal jurisdiction in Nebraska. In evaluating the question of whether a company's website should subject the company to specific personal jurisdiction, the Eighth Circuit Court of Appeals has adopted the *Zippo* analytical framework. *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 711 (8th Cir. 2003)("We agree with our sister circuits that the *Zippo* model is an appropriate approach in cases of specific jurisdiction -, i.e., ones in which we need only find 'minimum contacts.'"). In *Lakin*, the Eighth Circuit Court applied the following analysis to determine whether a defendant's website subjected the defendant to specific personal jurisdiction:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* at 710-11 (quoting *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997)).

Applying the *Zippo* framework to the present case, the Court concludes that SHARK's website is nothing more than a "passive Web site that does little more than make information available to those who are interested in it [and] is not grounds for the exercise [of] personal jurisdiction." *Zippo*, 952 F.Supp. at 1124. SHARK does not conduct any business through its website; instead, SHARK merely posts information on the website that is available to the general public.[1] Such a passive website does not give this Court personal jurisdiction over SHARK.

Romeo has failed to present sufficient facts to demonstrate that SHARK's alleged acts of tortious interference were in any way directed to Nebraska, and Romeo has not satisfied its prima facie burden of establishing specific personal jurisdiction.

### 4. Nebraska's Interest in Providing a Forum for its Residents

Any interest Nebraska may have in regulating an Illinois corporation's activities in Wyoming, Oklahoma, Illinois, and New York is limited, at best. While Nebraska may have an interest in providing a forum for its resident corporations, "that interest does not overcome the substantial inconvenience for the parties" to litigate in Nebraska. *Miller*, 528 F.3d at 1092 ("The inconvenience to the parties and their witnesses, under the facts of this

---

[1] In his affidavit, Hindi states that "SHARK's affiliated web pages are hosted by TierraNet, which is located, along with its server, in California. SHARK's website and its affiliated web pages do not sell any products or merchandise, do contain discussion boards and do not support a 'chat' function . . . SHARK's website and its affiliated web pages are not aimed or directed at Nebraska and can be viewed by interested internet users anywhere in the world. SHARK's website and its affiliated web pages do not solicit donations from the citizens of any particular state or location." (Hindi Aff. at ¶ ¶ 17-21).

case, is a factor that militates against [the plaintiff] for purposes of establishing personal jurisdiction over [the defendant].").

### 5. The Convenience of the Parties

SHARK is a small, not-for-profit organization with all its resources and two staff members located in Illinois. (Handi Aff. at ¶¶ 5-6). Requiring SHARK to defend a lawsuit in Nebraska would be an undue burden. Any interest Nebraska may have in this litigation does not outweigh the undue burden that would be imposed on SHARK if it were required to litigate in this forum.

## CONCLUSION

Romeo has failed to meet its burden of establishing a prima facie case of personal jurisdiction. Without the minimum contacts to satisfy the constitutional requirements of due process, this Court cannot exercise jurisdiction over SHARK. Romeo's claims for relief against SHARK will be dismissed without prejudice.

IT IS ORDERED:

1. Defendant Showing Animals Respect and Kindness, Inc.'s Motion to Dismiss (Filing No. 16) is granted;

2. Plaintiff Romeo Entertainment Group, Inc.'s Complaint is dismissed without prejudice; and

3. A separate Judgment will be entered.

DATED this 20th day of March, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge